# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 525 | **DATE** | 8/29/2000 |
| **CASE TITLE** | Robert E. Stephan, et al. vs. S. Jay Goldinger, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 9/14/2000 at 09:30 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's Motion for Summary Judgment on Counts I - V of Plaintiffs' Amended Complaint [53] is granted. Defendant's Motion for Partial Summary Judgment on Count I of Its Counterclaim [56] is granted. Plaintiff's Motion for Summary Judgment Against All Defendants [58] is denied. This case is set for status on Thursday, September 14, 2000 at 9:30 A.M.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | AUG 3 1 2000 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| RJ courtroom deputy's initials | | FILED FOR DOCKETING ED-7 00 AUG 30 PM 3:51 date mailed notice | mailing deputy initials |
| | | Date/time received in central Clerk's Office | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

ROBERT E. STEPHAN, the Estate of LUDWIG )
AUGUST STEPHAN, by Donald L. Muckel as )
Special Administrator, and TARGET AIRWAYS, )
LTD., d/b/a GREAT AMERICAN AIRWAYS, )
a Delaware Corporation, Debtor-in-Possession, )
)
                             Plaintiffs, )   No. 99 C 525
      v. )
) Judge Joan B. Gottschall
S. JAY GOLDINGER, CAPITAL INSIGHT )
BROKERAGE, CAPITAL INSIGHT, INC., and )   AUG 31 2000
REFCO, INC., )
)
                           Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Robert E. Stephan, the Estate of Ludwig A. Stephan, and Target Airways, Ltd. d/b/a Great American Airways, have brought suit against S. Jay Goldinger, Capital Insight, Inc. ("CI"), Capital Insight Brokerage ("CIB"), and Refco, Inc. stemming from the loss of millions of dollars invested by plaintiffs with defendants. Plaintiffs allege that Goldinger misrepresented the nature and risks of investments he made with plaintiffs' funds, and that he, through his control of CI and CIB, effected a variation of a Ponzi scheme in which new funds and funds of other customers were used to meet deficits and losses in existing customer trading accounts to give the appearance of profits. Plaintiffs allege that Goldinger placed many of these investment accounts with Refco, and that Refco participated in the scheme by treating the accounts of Goldinger's investors as a combined entity, failing to enforce proper margining of the accounts, and improperly allocating trades, profits, and losses among the accounts.



Plaintiffs' amended complaint sets forth four causes of action – commodity fraud under 7 U.S.C. § 6b, common-law fraud, breach of fiduciary duty, and civil conspiracy – against all defendants, and one cause of action – negligence – against Refco alone. Refco has filed a three-count counterclaim, alleging that plaintiffs breached the parties' forum selection agreements, covenants not to sue, and indemnification and hold harmless agreements. Plaintiffs and Refco have now filed cross-motions for summary judgment on plaintiffs' claims, and Refco has moved for summary judgment on its counterclaim for breach of the forum selection agreements.

## Analysis

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Timeliness is the first ground on which Refco has moved for summary judgment on plaintiffs' claims. Refco argues that plaintiffs' suit is time-barred under the terms of their contracts with Refco. The customer agreements provide that "[n]o action, regardless of form, arising out of transactions under this agreement may be brought by Customer more than one year after the cause of action arose." (Refco's Exh. 6 ¶ 18) Refco contends that plaintiffs' claims accrued well before December 1996 – *i.e.*, one year before plaintiffs filed their complaint in December 1997.

Plaintiffs do not challenge Refco's characterization of the timing of their claims' accrual, admitting that they learned of problems with their investments when they received a letter from Goldinger in January 1996. Rather, plaintiffs' challenge is directed toward Refco's suggestion that a one-year limitations period should apply in the first place. Plaintiffs contend that the contractual one-year period does not alter the two-year limitations period set forth in the Commodity Exchange Act, 7 U.S.C. § 25(c), relying on *Madero v. Refco, Inc.*, 934 F. Supp. 282 (N.D. Ill. 1996), as support.

In *Madero*, Judge Bucklo ruled that the parties were not able to contractually alter the CEA's two-year limitations period, reasoning that "[p]ermitting the parties to contract for a shorter limitations period would . . . be contrary to public policy." *Id.* at 284. Judge Bucklo reached her conclusion by extrapolating from language found in two Seventh Circuit rulings.

First, in *Cange v. Stotler and Co.*, 826 F.2d 581 (7th Cir. 1987) ("*Cange I*"), the court upheld a contractual limitations period where the cause of action accrued before the CEA's two-year limitations period was applicable. After observing that "courts will ordinarily uphold contractual limitations periods of one year or more," the court ruled that:

> . . . Congress' silence on a limitations period for pre-January 11, 1983, causes of action shows its willingness to accept reasonable limitations periods rather than a strong policy in favor of some particular limitations period. Because Congress did not provide an express statute of limitations applicable to this cause of action, allowing the parties to contract for a shorter limitations period than that which would be borrowed from state law is not contrary to public policy, assuming the contracted-for limitations period is reasonable, as is the case here.

*Id.* at 584.

The second case relied on by Judge Bucklo is *Taylor v. Western and S. Life Ins. Co.*, 966 F.2d 1188, 1204-05 (7th Cir. 1992), in which the court upheld the applicability of a contractual

3

limitations period to a § 1981 claim. The court observed that "contractual limitations of action are generally upheld under Illinois law" as long as they are (1) knowingly and voluntarily accepted, (2) reasonable, and (3) not inconsistent with public policy. *Id.* at 1203-04. In determining whether Illinois law was "inconsistent with the federal policy underlying section 1981," *id.* at 1203, the *Taylor* court first recited the "general federal policy" toward limitations clauses:

> [I]n the absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period.

*Id.* at 1204 (quoting *Order of United Commercial Travelers of America v. Wolfe*, 331 U.S. 586, 608 (1947)).

Citing *Cange I*, the court then reasoned that "by enacting section 1981 without a statute of limitations, Congress implied that it is willing to live with a wide range of state statutes and rules governing limitations of actions under section 1981." *Id.* at 1205. Accordingly, the *Taylor* court concluded that "Illinois law on contractual limitations of action is not inconsistent with the federal policy underlying section 1981." *Id.*

This court does not believe that the reasoning relied on by the *Cange I* and *Taylor* courts – *i.e.*, that the absence of a limitations period in federal statutes suggests a willingness to accept reasonable contractual limitations periods – necessarily leads to the principle extracted from it by Judge Bucklo – *i.e.*, that the inclusion of a limitations period in a federal statute forecloses any contractual alteration of that period.

In *MFS Int'l, Inc. v. International Telcom Ltd.*, 50 F. Supp.2d 517 (E.D. Va. 1999), the

court ruled that the two-year limitations period provided for by the Federal Communications Act ("FCA"), 47 U.S.C. § 151, *et seq.*, did not trump the parties' contractual one-year limitations period. The FCA provides that "[a]ll complaints against carriers for the recovery of damages not based on overcharges shall be filed with the Commission within two years from the time the cause of action accrues, and not after." 47 U.S.C. § 415(b). Defendant Telcom argued that this explicit statute of limitations precluded the operation of a shorter contractual limitations period.

While the *MFS Int'l* court observed that "[i]t has long been well-settled that parties may agree to a limitations period shorter than that provided by state law," *MFS Int'l*, 50 F. Supp.2d at 521 (citing *Missouri, K&T R. Co. v. Harriman Bros.*, 227 U.S. 657, 672 (1913)), Telcom contended that "the analysis changes when a federal statute of limitations is at issue," *id.*, relying on *Taylor* for the proposition that when Congress sets an express statute of limitations, "parties may not enforce a contract for a shorter limitations period as such a contract would be contrary to public policy." *Id.* at 522. The court rejected this extrapolation from *Taylor*, noting that *Madero* is the only case adopting Telcom's argument and concluding that *Taylor* more sensibly stands for the narrower notion "that parties may not shorten a Congressionally-enacted limitations period that precludes shortening either explicitly or by clear implication." *Id.* The court reasoned further that federal statutes of limitations "neither explicitly nor implicitly embody a prohibition or policy against private agreements shortening the limitations period." *Id.* "Absent such a prohibition or policy," the court found "no reason to conclude that private agreements shortening a federal limitations period violate public policy." *Id.*

The *MFS Int'l* court then looked to the federal policy on limitations clauses set forth by the Supreme Court in *Wolfe* – that "in the absence of a controlling statute to the contrary," a

5

contract may limit the time prescribed in the general statute of limitations. *Id.* (quoting *Wolfe*, 331 U.S. at 608). The court reasoned that "'controlling statute to the contrary' cannot mean, as Telcom argues, any federal statute of limitations, for *Wolfe* does not distinguish between state and federal statutes." *Id.* at 522. "[A] typical state statute of limitations cannot be a 'controlling statute to the contrary'" because the general rule allowing parties to shorten a limitations period would be rendered meaningless. *Id.* Accordingly, "[a] 'controlling statute to the contrary' must sensibly be understood to mean a federal or state statute that explicitly proscribes such contractual limitations." *Id.*

This court agrees with the *MFS Int'l* court's conclusion that "there is no justification for disallowing the relevant contractual provision simply because an explicit federal statute of limitations exists when that statute does not prohibit such shortening, either explicitly or by clear implication." *Id.* at 523. In this court's view, the CEA's statute of limitations language does not suggest any intention by Congress to preclude parties from agreeing to shorten the prescribed period. The CEA provides that suits under the Act "shall be brought *not later than* two years after the date the cause of action arises." 7 U.S.C. § 25(c) (emphasis added). If the parties had sought to extend the limitations period to three years, the CEA would no doubt preempt their efforts. The CEA cannot, however, be read to cut off their freedom to contract for a shorter limitations period, provided that the time allowed is reasonable. Because one year appears to be an entirely reasonable limitations period – and indeed, plaintiffs do not contest its reasonableness – the court finds that the one-year limitations period set forth in the customer agreements governs all of plaintiffs' claims.

Despite the applicability of the one-year limitations period, plaintiffs offer two reasons

6

why their claims are not time-barred. First, plaintiffs contend that Refco should be equitably estopped from asserting the statute of limitations as a defense because Refco's attorney represented in the media that the company's structure made the alleged fraud impossible. Plaintiffs point to *Estate of Berger v. Refco, Inc.*, No. C98-1248C (W.D. Wash. Jul. 19, 1999), in which the court denied Refco's motion to dismiss, finding that Refco may be equitably estopped from raising their limitations defense based on plaintiffs' allegation that "Refco actively and falsely represented that the alleged fraud would have been impossible given the structure and nature of its relationship with Capital Insight and Goldinger." (Pls.' Exh. 2 at 6)

Plaintiffs' estoppel evidence consists of a January 1996 Wall Street Journal article in which Refco's attorney claims that "it would have been impossible for Refco traders to allocate gains and losses" among Goldinger's accounts, and that the potential for manipulation "was reduced by the fact that Mr. Goldinger, unlike other Refco clients, wasn't permitted to send orders to the trading floor in batches." (Pls.' Exh. 1) While Plaintiffs allege that R.E. Stephan reviewed this article in 1996, the cited testimony from Stephan's deposition fails to support that point:

> Q: Have you ever seen this article before, sir?
>
> A: I might have. I don't know. I can't remember.
>
> Q: Do you know why that article was in the corporation's or your personal files?
>
> [objection]
>
> A: I think somebody probably faxed it to us. I don't remember who.
>
> Q: Do you remember – do you recall ever seeing a newspaper article about Mr. Goldinger or Refco after he reported the losses to you in December of '95?

A: Well, I – probably. I'm not – I can't say for certain.

Q: Do you know who gave them to you?

A: Well, I take – I used to take the San Francisco Examiner. I don't take it anymore. It always had a pretty good financial column. That's one place I might have seen it, San Francisco paper.

Q: Did you review The Wall Street Journal?

A: No.

Q: Do you recall any conversations you had with anyone regarding newspaper articles dealing with Refco or Goldinger?

A: Oh, maybe in '96 there might have been some with a broker that I deal with in Reno by the name of Steve Jackson.

Q: Do you recall what that conversation was?

A: No, other than he knew we took a big hit there because we told him we had this investment.

Q: Did he suggest to you that Refco was at fault?

A: No.

Q: Do you recall telling anyone prior to December of 1996 or discussing with anyone before December of 1996 whether or not Refco was at fault for the losses?

A: I don't think so.

(Pls.' Exh. 3 at 304-06)

"In essence, equitable estoppel focuses on whether the defendant acted affirmatively to stop or delay the plaintiff from bringing suit within the limitations period." *Smith v. City of Chicago Heights*, 951 F.2d 834, 841 (7th Cir. 1992). It is available only under limited circumstances, *id.* at 840-41, and among the factors courts should look for are "a showing of the

plaintiff's actual and reasonable reliance on the defendant's conduct or representations" and "evidence of improper purpose on the part of the defendant and the defendant's actual or constructive knowledge of the deceptive nature of its conduct." *Id.* at 841 (quoting *Mull v. ARCO Durethene Plastics, Inc.*, 784 F.2d 284, 292 (7th Cir. 1986)).

Even assuming that the Wall Street Journal article contains deliberate misstatements by Refco's attorney, and that those statements were made for an improper purpose, plaintiffs' equitable estoppel argument fails. Plaintiffs have not submitted any evidence suggesting that they postponed suing Refco in reasonable reliance on the statements in the article. Indeed, judging by the cited deposition testimony, there is no evidence that plaintiffs even read the article.

The lack of factual underpinning to plaintiffs' estoppel claim is fatal here, unlike in *Berger*. In that case, the court was addressing Refco's motion to dismiss under Rule 12(b)(6). The court simply determined that the plaintiff adequately had pled an equitable estoppel defense; the court made no finding that such a defense was supported by the evidence. Here, at the summary judgment stage, plaintiffs' conclusory allegations are insufficient. The court finds that Refco is not equitably estopped from asserting its statute of limitations defense.

In plaintiffs' final challenge to the operation of the one-year limitations period, they argue that Refco's material breaches of the customer agreements "relieve plaintiffs of any obligation to perform" under those agreements. (Pls.' Resp. at 6) Even assuming that Refco had breached the customer agreements, that does not make the limitations clause unenforceable. Plaintiffs' suggested approach to such clauses would render them largely meaningless. The one-year limitations period applies to causes of action "arising out of transactions" under the customer

agreements. Obviously, such causes of action often will involve allegations that one or both parties have breached the agreement. If courts lifted the operation of a limitations clause once a party alleged that the underlying contract was breached, the clause would be restricted from operating in the very circumstances for which it was designed. Plaintiffs offer no sound reason for departing from the wealth of case law enforcing limitations clauses against a party alleging breach of contract, *see, e.g., Wood v. Allstate Ins. Co.*, 21 F.3d 741, 743-44 (7th Cir. 1994), and the court declines to do so.

Based on the one-year limitations clause set forth in the customer agreements executed by plaintiffs, the court finds that all of plaintiffs' claims against Refco are time-barred. Refco's motion for summary judgment on Counts I through V of plaintiffs' complaint is granted.

In light of this analysis, plaintiffs' motion for summary judgment must be denied as moot as applied to Refco. However, the court must address the motion as it applies to Goldinger, CI, and CIB – none of whom have participated in this litigation to any real extent. Because Goldinger, CIB, and CI have not responded to plaintiffs' statement of material facts, those facts are deemed admitted. *See* Local Rule 56.1(b)(3)(B). Nevertheless, the court denies plaintiffs' motion for summary judgment as to these three defendants.

While plaintiffs' motion names all four defendants, the substance of their summary judgment arguments targets Refco. Nowhere in plaintiffs' summary judgment memorandum do they explain why summary judgment is warranted against CIB or CI. The only argument addressing Goldinger is the following:

> Direct evidence from plaintiffs establishes Goldinger's misrepresentations and false promises about protecting plaintiffs' principal investment. Goldinger's directions and responsibility for fraudulent allocations between and among his Refco accounts

10

is established by deposition testimony from Refco back office personnel. [Statement ¶¶ 14-36] Additionally, Goldinger, asserting his Fifth Amendment protections, has declined to participate in this litigation. [Statement ¶ 45; Exhibit B (CJM Decl) Tab 11] Finally, Goldinger's plea agreement in the Los Angeles criminal action, his SEC and CFTC settlements, and the Judgment against him in the California case at a minimum estop him from contesting these allegations. [Statement ¶¶ 46-51; Exhibit C (FNM Decl) Tabs 10-17]

(Pls.' Mtn. for Summ. J. at 7)

It is not this court's responsibility to construct plaintiffs' summary judgment arguments on their behalf. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion . . . ."); *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 1992) ("The moving party bears the initial burden of directing the district court to the determinative issues and the available evidence that pertains to each."). Plaintiffs may not simply make conclusory allegations of fraud, regardless of how many paragraphs from their statement of facts are cited in support, nor may they allege estoppel without explaining why estoppel applies under these circumstances. The defendants' failure to respond does not make an award of summary judgment automatic. *See Nabozny v. Podlesny*, 92 F.3d 446, 457 n.9 (7th Cir. 1996) ("[E]ven where the non-moving party fails to file a timely response to a motion for summary judgment, the district court must still review the uncontroverted facts and make a finding that summary judgment is appropriate as a matter of law."). Goldinger, CIB and CI may very well be prime targets for summary judgment. Plaintiffs' current motion, however, while nominally addressing "all defendants," sets forth a case for summary judgment only against Refco. The motion is denied, but plaintiffs have leave to refile a motion for summary judgment specifically addressing Goldinger, CIB and CI.

11

The final matter for the court to address is Refco's motion for partial summary judgment on Count I of its counterclaim, which alleges that plaintiffs breached the forum-selection clause in their customer agreements with Refco by suing Refco in Nevada, rather than in Chicago, as called for in the agreements. On November 12, 1998, the federal district court for Nevada ruled that "the forum selection clauses in the Customer Agreements are valid and enforceable with respect to plaintiffs' claims," and thus transferred the action to this court. (Refco's Exh. 4 at 9) Refco argues that the undisputed facts establish that plaintiffs are liable for breach of the forum selection clause.

It is undisputed that each of the plaintiffs executed a forum selection agreement designating Chicago as the only appropriate forum for any dispute with Refco. (Pls.' Resp. to Rule 12(M) Statement ¶¶ 1-3) It is also undisputed that the district court in Nevada transferred the case to this court on the basis of those forum selection agreements. (*Id.* ¶ 4)

Plaintiffs challenge Refco's entitlement to summary judgment on the ground that Refco's breaches of the customer agreements relieved plaintiffs of any obligation to perform. Specifically, plaintiffs allege that "Refco breached its contracts with plaintiffs immediately and continuously by the illegal allocation of trades between and among the various Goldinger/Refco accounts trading T-Bond contracts." (Pls.' Resp. at 2) Plaintiffs also argue that the breaches by Refco, a fiduciary of plaintiffs, allows the contracts to be set aside. Finally, plaintiffs argue that summary judgment is precluded by the various affirmative defenses pled by plaintiffs in response to Refco's counterclaim – namely, Refco's failure to perform, Refco's fraud, estoppel, waiver and unclean hands.

The court finds plaintiffs' arguments unconvincing. "Like any contract provision, a

12

forum-selection clause will be enforced unless enforcement would be unreasonable or unjust or the provision was procured by fraud or overreaching." *Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992). As with plaintiffs' argument regarding the limitations clause, Refco's alleged breach of the customer agreements does not make the forum selection clause unenforceable. A forum selection clause only comes into play if the parties have some dispute related to the agreement that requires litigation. Predictably, such disputes often will involve allegations that one or both parties have breached the agreement. If a forum selection clause was invalidated every time a party alleged a breach of the underlying contract, the clause would be restricted from operating in the very circumstances for which it was designed. Plaintiffs offer no sound reason for departing from the Seventh Circuit's enforcement of forum selection clauses against a party claiming breach, *see Hugel v. Corporation of Lloyd's*, 999 F.2d 206 (7th Cir. 1993), and, as with the limitations clause, the court declines to do so.

Plaintiffs' invocation of their affirmative defenses as a ground for denying summary judgment is similarly unavailing. To defeat Refco's motion for summary judgment, plaintiffs must raise an issue of material fact as to the enforceability of the forum selection clause or their compliance with that clause. Conclusory references to the doctrines of unclean hands, estoppel or waiver are not sufficient. Plaintiffs are liable for breaching the forum selection clauses of their customer agreements with Refco. Refco's motion for partial summary judgment on Count I of Refco's counterclaim is granted.

## Conclusion

For the above reasons, Refco's motion for summary judgment on Counts I - V of plaintiffs' amended complaint is granted, plaintiffs' motion for summary judgment against all

13

defendants is denied, and Refco's motion for partial summary judgment on Count I of its counterclaim is granted.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATE: August 28, 2000